**Robert BUSTILLOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 43390.

Court of Criminal Appeals of Texas.

Feb. 17, 1971.

Rehearing Denied March 24, 1971.

Blanchard, Clifford & Gilkerson, by John S. Sims, of counsel, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for assault with intent to murder with malice aforethought. The punishment, assessed by the jury, was 25 years.

The grounds of error relate to the court's charge, the appointment of an interpreter, and the court's refusal to restrict the State's right to impeach appellant by use of a prior felony conviction in the event the appellant took the stand at the guilt stage of the bifurcated trial.

The sufficiency of the evidence is not challenged. The State's evidence reflects that in the early morning hours of September 1, 1968, about 2 or 3 a. m., the appellant Bustillos motioned to Domingo Enriquez, the complaining witness, to step outside the Reyna's Cafe located in the city of Lubbock. When Enriquez stepped outside the cafe the appellant, who "looked like he was kind of drunk or * * * was smoking something" pulled a .22 caliber pistol from his pocket and fired four times, striking Domingo Enriquez twice in the wrist and once in the stomach.

Guadalupe Enriquez came to the aid of his brother and was shot twice by the appellant who then left the scene.

The attack upon the complaining witness appears to have been unprovoked. While both parties had been in the cafe earlier, it was shown they did not know each other and that there had not been any prior difficulty.

Initially, appellant urges the court erred in refusing his "motion to keep the State from inquiring into" his "past history of criminal conviction on cross-examination, thus depriving him of his right to testify on his behalf without inflaming and prejudicing the minds of the jurors." He contends he was faced with the dilemma of testifying in his own behalf and being prejudiced by evidence of his prior conviction or of remaining silent and being prejudiced by his silence.

After the State rested its case in chief at the guilt stage of the trial and the motion for instructed verdict had been overruled, the appellant urged his motion. Testifying in the absence of the jury the 50 year old appellant related that when he left the cafe on the date in question a "real drunk boy" wanted to fight and pulled out a gun which he (the appellant) took away from the boy and shot the boy with when the attack continued, and he shot another man who came running towards him. In essence, he related he had acted in self-defense. He admitted he had been sentenced to life imprisonment in 1948 for murder, had been paroled in 1958 and that such parole had been revoked "for marijuana cigarettes" and that he had been released again on parole two and one-half years prior to the alleged offense.

Upon this testimony the appellant requested the court to grant his motion to restrict impeachment. When the court refused to grant the motion the appellant did not take the stand in the jury's presence and offered no evidence in his behalf.

It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witness. This principle is unquestioned. Texas Law of Evidence, McCormick and Ray, Vol. I, Chapter 8, Sec. 643, p. 487; 1 Branch's Ann.P.C., 2d ed., Sec. 168, p. 170 and cases there cited; 62 Tex.Jur.2d, Witnesses, Sec. 205, p. 130; Shelton v. State, Tex.Cr.App., 397 S.W.2d 850. See also Bendelow v. United States, 418 F.2d 42, 5th Cir. Cf. Brumfield v. State, Tex.Cr. App., 445 S.W.2d 732.

Thus when an accused voluntarily elects to so testify he subjects himself to any legitimate cross-examination within the rules of evidence.

Since the early case of Lights v. State, 17 S.W. 428 (1886—Court of Appeals), the rule was established that the credibility of a witness in a criminal case could be attacked by a showing that he had been convicted of a crime. There are, however, some limitations upon the rule which developed. The conviction must be for a felony or a misdemeanor involving moral turpitude, the conviction must be final and must' have occurred at a time sufficiently recent to have some bearing on the present credibility of the witness and the evidence must be limited to the fact of the conviction itself and details thereof may not be shown.

As the rule in Texas criminal cases grew, it also became permissible to attack the

credibility of a defendant or other witness by the fact that he was charged by complaint, information or indictment with a felony or misdemeanor involving moral turpitude. See Carroll v. State, 32 Tex.Cr.R. 431, 24 S.W. 100; Chandler, "Attacking Credibility of Witnesses By Proof Of Charge Or Conviction Of Crime," 10 Tex. Law Rev. 257. See also 161 A.L.R. 233, 242, 248. This Texas rule allowing proof of a charge of crime for the purpose of impeachment was contrary to the general rule prevailing elsewhere. See 10 Tex.Law Rev. 257, supra, at p. 264.

Wisely, in 1951 the Legislature moved to eliminate the use of a criminal charge in this manner. Article 732a, Vernon's Ann.C.C.P. (Acts 1951, 52nd Leg., Ch. 458, p. 814) provided:

"The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired."

While the Court of Criminal Appeals recognized the expressed intent of the Legislature to exclude extraneous offenses for impeachment which had resulted in a final conviction (except in unexpired probation and suspended sentence cases), it held that the statute did not change, alter or vary the long established rule that proof of a prior final conviction for crime will be received only when the offense is a felony or one involving moral turpitude which is not too remote. Neill v. State, 158 Tex.Cr. R. 551, 258 S.W.2d 328; Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W.2d 875; Mauldin v. State, 165 Tex.Cr.R. 405, 308 S.W.2d 36; Dukes v. State, 161 Tex.Cr.R. 423, 277 S.W.2d 710; Wardrope v. State, 170 Tex. Cr.R. 305, 340 S.W.2d 498; Ridler v. State, Tex.Cr.App., 375 S.W.2d 447.

And the Legislature never sought by legislative enactment to vary such interpretation. In fact, Article 732a, supra, was brought forward in the 1965 Code of Criminal Procedure unchanged except for the addition of one sentence at the conclusion thereof which reads: "In trials of defendants under Article 36.09, it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness."

The construction earlier placed upon former Article 732a was also placed upon the new Article 38.29. Stephens v. State, Tex.Cr.App., 417 S.W.2d 286; Hall v. State, Tex.Cr.App., 402 S.W.2d 752.

The rule in this state for impeaching by use of a prior conviction a defendant or other witness in a criminal case would appear to be well established.

Unfortunately perhaps for the bench and bar, the rule in civil cases in Texas is different.[1]

1. The present rule laid down in civil cases for use of a prior charge or conviction of crime to impeach is that (1) the conviction (either felony or misdemeanor) may be shown if and only when it involves moral turpitude and (2) proof of a charge of any such offense may be shown only when the witness admits he is guilty of such charge. Compton v. Jay, Tex., 389 S.W.2d 639; Nutter v. Dearing, Tex.Civ.App., 400 S.W.2d 346; Note, 43 Tex.Law Rev. 1106; Texas Law of Evidence, McCormick and Ray, Vol. I, Ch. 8, Sec. 660 pp. 505, 508. Remoteness also has application to the civil case rule. Travelers Ins. Co. v. Dunn, Tex.Civ.App., 383 S.W.2d 197, ref. n. r. e.; Dallas County Water Control and Improvement Dis. No. 7 v. Ingram, Tex.Civ.App., 395 S.W.2d 834, ref. n. r. e. It would appear that Texas is the only State making a distinction in the rules between civil and criminal cases. 10 Tex. Law Rev. 1106, 1107. For an interest-

The appellant recognizes the past interpretations that have been given Article 38.-29, supra, and does not urge an adoption of the civil rule but contends this court should adopt and apply the Luck doctrine (Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763) espoused by the United States Court of Appeals for the D.C. Circuit. He contends a better balance between relevance and prejudice could be struck without violating the legislative intent expressed in Article 38.29, supra.

In Luck the court was faced with a testifying defendant charged with house breaking against whom the prosecutor used a prior conviction of grand larceny over objection. The applicable statute (14 D.C. Code Ann. 14–305) read in its pertinent parts:

"A person is not incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a crime. The fact of conviction may be given in evidence to affect his credibility as a witness."

On appeal the prosecution contended the statute permitted the impeachment of any witness in the manner utilized as a matter of right.

While the conviction was reversed on another ground, a large portion of the opinion was devoted to the impeachment question. Judge McGowan, writing for the majority, seized upon the word "may" used in the statute, noting it had been used instead of the word "shall." The majority thus concluded "the trial court is not required to allow impeachment by prior conviction every time a defendant takes the stand in his own defense." The prior conviction "may" be used if the trial judge so decides, leaving room for the operation of the court's sound discretion as the circumstances unfold in a particular trial.

Judge McGowan further stated:

"There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field."

Luck teaches the judge is to weigh not only the probative value of the prior conviction against the likelihood of prejudice but consider the probable effect of the evidence in keeping the accused from the witness stand and the importance to the jury of his testimony.

For such purpose the Luck case created a procedural device—a preliminary hearing in the absence of the jury where the trial court can attempt to strike a reasonable balance between the interests of the accused and the public.

The dictum of Luck became law in Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242, and in Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, cert. den. 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287, the same court speaking through Justice Burger (now Chief Justice of the United States Supreme Court) announced guidelines to assist trial judges in making Luck determinations.[2] In Gordon the Court stated:

"The test of Luck, however, is that to bar them [prior convictions] as im-

---

ing history and development of the two rules see Chandler, "Attacking Credibility of Witnesses By Proof Of Charge Or Conviction Of Crime," 10 Tex.Law Rev. 257.

2. In Gordon Justice Burger wrote:
 "In considering how the District Court is to exercise the discretionary power we granted, we must look to the legitimate purpose of impeachment which is,

peachment the court must find that the prejudice must 'far outweigh' the probative relevance to credibility."

And in Davis v. United States, 133 U.S. App.D.C. 172, 409 F.2d 453, the court extended the Luck doctrine to other witnesses as well as the defendant, noting though the trial judge may, in some cases, have to make distinctions in his impeachment rulings.

Most of the writings concerning the Luck doctrine have emanated from this same court. See Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767; Brooke v. United States, 128 U.S.App.D.C. 19, 385 F.2d 279; Weaver v. United States, 133 U. S.App.D.C. 66, 408 F.2d 1269; United States v. Bailey, 138 U.S.App.D.C. 242, 426 F.2d 1236; Williams v. United States, 129 U.S.App.D.C. 332, 394 F.2d 957; United States v. Coleman, 137 U.S.App.D.C. 110,

420 F.2d 1313. In some of the cases this same court has declined to hold the trial court's failure to exercise discretion "clear error" when Luck was not called to its attention. Covington v. United States, 125 U.S.App.D.C. 224, 370 F.2d 246; Stevens v. United States, 125 U.S.App.D.C. 239, 370 F.2d 485; Hood v. United States, 125 U.S. App.D.C. 16, 365 F.2d 949; Walker v. United States, 124 U.S.App.D.C. 194, 363 F.2d 681, cert. den. 386 U.S. 922, 87 S.Ct. 891, 17 L.Ed.2d 794; Lewis v. United States, 127 U.S.App.D.C. 115, 381 F.2d 894.

In seeking to take advantage of the Luck doctrine the appellant in the case at bar urges that he has met the threshold burden of demonstrating the peculiar need for his own testimony as required by Evans v. United States, 130 U.S.App.D.C. 114, 397 F.2d 675, by presenting his motion in limine

of course, not to show that the accused who takes the stand is a 'bad' person but rather to show background facts which bear directly on whether jurors ought to believe him rather than other and conflicting witnesses. In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category. The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness.

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong

reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure and where the conviction directly relates to veracity.

"Of course, there are many other factors that may be relevant in deciding whether or not to exclude prior convictions in a particular case. See Luck, supra [121 U.S.App.D.C.] at 157, 348 F.2d at 769. One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." 383 F.2d 936, 940.

and presenting his testimony in a non-jury hearing so the trial judge could weigh and balance the factors involved.

The Luck doctrine has found some favor outside the Court of Appeals of its origin. United States v. DiLorenzo, 2nd Cir., 429 F.2d 216; United States v. Palumbo, 2nd Cir., 401 F.2d 270; United States v. Johnson, 1st Cir., 412 F.2d 753; United States v. Hildreth, 4th Cir., 387 F.2d 328; Cotton v. Commonwealth of Kentucky, Ky., 454 S.W.2d 698; State v. Motley, 199 Kan. 335, 430 P.2d 264. See also Uniform Rule of Evidence 21;[3] Model Code of Evidence Rule 106; McCormick, Evidence, Sec. 43, at 94; Wharton's Criminal Evidence, Vol. 3, Sec. 946, p. 383.

The doctrine has not by any means met wholesale approval.

In Bendelow v. United States, 5th Cir., 418 F.2d 42, the court said:

"Absent the compulsion of an authoritative decision, we are unwilling to sponsor for this Circuit a rule which would immunize a criminal defendant from attacks on his credibility by proof of prior convictions so long as he is careful to repeat his original offense in subseuqent transgressions."

In Burg v. United States, 406 F.2d 235, the 9th Circuit Court of Appeals said:

"The weight of authority in the federal courts is that evidence of conviction of a felony is admissible to impeach the credibility of a witness. In the last few years that consistent line of precedents has been interrupted by decisions of the United States Court of Appeals for the District of Columbia. * * *

* * * The defendant urges that we apply the doctrine of those cases to his instant case. For us to do what the defendant urges would be a sharp departure from the regular course of decisions in the federal courts."

And the court did not so depart. See also United States v. Plata, 7th Cir., 361 F.2d 958, 962. The 8th Circuit Court of Appeals pointed out in United States v. Scarpellino, 431 F.2d 475, that Luck and other District of Columbia decisions were based upon a provision of the District of Columbia Code relating to witnesses and impeachment and such decisions afforded no precedential value for that circuit. And in United States v. Morefield, 7th Cir., 411 F.2d 1186, it was noted that the approach of the Luck and Gordon cases had been rejected by the drafters of the Proposed Rules of Evidence for the United States District Courts and Magistrates. Rule 6–09 (Prelim. Draft 1969).

The Luck doctrine has not fared much better in the state courts.

In State v. Hawthorne, 49 N.J. 130, 228 A.2d 682, the New Jersey Supreme Court discussed the use of the word "may" in the New Jersey impeachment of a witness statute which was substantially the same as the code provision involved in Luck. The court found that "may" as used in the state statute does not bespeak a grant of permission or discretion to the trial judge to receive or reject the proof, but that the parties are invested with option and the record of conviction must be received when properly offered. The court rejected the Luck holding noting that the construction was "strained and not just justified by the context of the statute." In People v. Gilmore (1st Dist. Fourth Division) 118 Ill.App.2d 100, 254 N.E.2d 590, the court construed the Illinois statute in the same manner as the Hawthorne decision had the New Jersey statute, holding that when properly presented it was mandatory that the court receive evidence of the accused's

3. Said Rule 21 should be read in conjunction with Rule 23(4), Uniform Rules of Evidence, which provides: "If an accused in a criminal action does not testify, counsel may comment upon accused's failure to testify, and the trier of fact may draw all reasonable inferences therefrom." Cf., however, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

prior conviction. To the same effect is State v. West, 173 N.W.2d 468, a decision by the Supreme Court of Minnesota. See also People v. Palmeri, 58 Misc.2d 288, 295 N.Y.S.2d 128 and People v. Kelly, 261 Cal. App.2d 708, 68 Cal.Rptr. 337.

In State v. Cote, 108 N.H. 290, 235 A.2d 111 (1967) the court overruled the defendant's exceptions to the introduction into evidence of his prior convictions and quoted an earlier New Hampshire case, State v. Duke, 100 N.H. 292, 123 A.2d 745, for the proposition that: " 'We are aware of the arguments for a rule which would limit impeachment in such cases to crimes directly involving lack of veracity * * * [but] such a rule represents too narrow and artificial a view.' "

In Duke, the New Hampshire Court said:

"The object of a trial is not solely to surround an accused with legal safeguards but also to discover the truth. What a person *is* often determines whether he should be believed. When a defendant voluntarily testifies in a criminal case, he asks the jury to accept his word. * * * In transactions of everyday life this is probably the first thing that they would wish to know. * * * Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey, as in the case at bar, though the violations are not concerned solely with crimes involving 'dishonesty and false statement.' "

In most states remoteness in time is no bar to the introduction of prior convictions into evidence. 12 Saint Louis University Law Journal, 277, 281. See also People v. Buford, 396 Ill. 158, 71 N.E.2d 340; State v. Hawthorne, supra. And as earlier noted, some state statutes have been construed as making mandatory the admissibility of proffered evidence of a prior conviction for impeachment of a witness.

Texas courts have long recognized that a remote conviction, whether involving crimes of violence or deceit, is a poor indication of the accused's present character. Harmon v. State, 119 Tex.Cr.R. 426, 45 S.W.2d 583. In both civil and criminal cases our courts have imposed limitations without legislative assistance or sanctions. Under the present interpretation of Article 38.29, supra, remoteness is a limitation to be considered, and the trial judges are vested with a great deal of discretion in making that determination, subject to guidelines developed by the appellate courts. Chandler v. State, 155 Tex.Cr.R. 41, 229 S.W.2d 71; Dillard v. State, Tex.Cr.App., 218 S.W.2d 476; Lott v. State, 123 Tex.Cr.R. 591, 60 S.W.2d 223. While the principle of remoteness has been described as not "a very satisfactory addition to the law governing the impeachment," it has long been a part of Texas law. See 19 Hastings Law Journal, 919, 928.

It is clear from what has been said above that the Texas practice lies between the practice common in such states as New Jersey and the Luck doctrine.

■ After careful consideration we adhere to our present practice and decline to apply the Luck doctrine to the case at bar. The court did not abuse its discretion in refusing to allow the appellant to testify free from any chance of impeachment by virtue of his prior conviction at the guilt stage of the bifurcated trial.[4]

Appellant's attack upon the court's action regarding the impeachment issue is actually two pronged. He also contends that if this court adheres to its present interpretations of Article 38.29, supra, the 1948 murder conviction was too remote to be used for impeachment.

In 62 Tex.Jur.2d, Witnesses, Sec. 273, p. 248, it is written:

"The question of remoteness is usually determined in the light of the particular

---

4. The prior conviction for murder was introduced into evidence as appellant's "prior criminal record" at the penalty

stage of the trial. See Article 37.07, V.A.C.C.P.

facts of each case, especially regarding subsequent conduct of convict; the youthfulness of the witness when he committed the offense is also an important consideration. In any event, the question is one addressed largely to the discretion of the trial court, and no hard and fast rule or period of time may be fixed. It has, on the other hand, been held that where there is evidence showing a lack of reformation, or in any event the subsequent conviction of another felony, the prior conviction is not deemed subject to the objection of remoteness.

"It is further held that, in determining whether the conviction is too remote to be available for impeachment time is considered to run from the time of release from prison."

See also Ferguson v. State, 170 Tex.Cr.R. 58, 338 S.W.2d 454; 1 Branch's Ann.P.C., 2d ed., Sec. 192; Dillard v. State, Tex.Cr. App., 218 S.W.2d 476; Toms v. State, 150 Tex.Cr.R. 264, 200 S.W.2d 174.

In light of the fact that appellant was presently on parole and had been released from the Texas Department of Corrections only two and one-half years prior to the alleged offense the court did not err in failing to grant motion on the ground of remoteness. See Taylor v. State, 163 Tex.Cr.R. 42, 288 S.W.2d 516.

In his second ground of error appellant urges the trial court erred in correcting its charge after it had been read to the jury and after the prosecution had argued that part of the charge where the correction was made, and before appellant was able to rebut such argument.

An indictment for assault to murder with malice aforethought need not allege the means used nor the manner of the assault. Johnson v. State, Tex.Cr.App., 384 S.W. 2d 885; Thom v. State, 167 Tex.Cr.R. 258, 319 S.W.2d 313; 4 Branch's Ann.P.C., 2d ed., Sec. 1799, p. 168.

The indictment in the case at bar did not allege the means used nor the manner of the assault.

The undisputed evidence reflects the assault was by use of a gun.

The court in its original charge at the first stage of the bifurcated trial instructed the jurors, over objection, that they could not convict unless they found beyond a reasonable doubt that the appellant committed the alleged offense "with a gun." The same instruction was also given over objection in connection with the charge on assault to murder without malice.

"The court in its charge may assume the existence of a fact that is uncontroverted or one that is established conclusively by the evidence. An objection that a charge is on the weight of the evidence is untenable where there is no dispute as to the fact." 31 Tex.Jur.2d, Instructions, Sec. 82, p. 618.

Since the undisputed evidence was that the alleged assault was committed with a gun the court did not err in so charging even though a greater burden was placed upon the State.

It is noted that after the State's opening argument commenting on the evidence and the charge, the court corrected its charge by striking the phrase "with a gun" from two paragraphs of the charge, re-reading the paragraphs and referring to the earlier inclusion as a "clerical error."

Such change or correction of the charge was over objection of the appellant that the same was impermissible under the provisions of Article 36.16, V.A.C.C.P.[5] In light of the purpose of such statute the court may before verdict withdraw and correct its charge if convinced an erroneous charge has been given. Nowlin v. State, 76 Tex.Cr.R. 480, 175 S.W. 1070. See also

5. Such statute reads in part: "After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony * * *."

**126**

31 Tex.Jur.2d, Instructions, Secs. 46 and 47, pp. 564, 565.

The correction made was exactly what the appellant had requested prior to the reading of the charge to the jury.

We perceive no error.

Lastly, appellant contends the court erred in appointing an employee of the county attorney's office as an interpreter and that such action was "not in keeping" with Article 38.08, V.A.C.C.P.

■ Mrs. Sally Garza, a clerical employee in the office of the Lubbock County Attorney, testified she had acted as court interpreter on three previous occasions and did not receive any extra compensation. It appears she merely acted to assist the court when the need for an interpreter arose.

The record does not reflect that the county attorney participated in this prosecution, and it was shown that Mrs. Garza was not acquainted with the appellant or any of his family.

The appellant objected to Mrs. Garza's selection as interpreter because she was a part of the "law enforcement team," and would be "holding two jobs" under the Constitution.

No effort was made to show the availability of other interpreters.

It appears from the record that Mrs. Garza sat at the counsel table and translated the proceedings conducted in English into Spanish for the benefit of the appellant, and subsequently acted as interpreter when appellant testified out of the jury's presence. There is no claim that she did not accurately and correctly interpret the testimony.

While the use of a partisan interpreter should be avoided, Nader v. State, 86 Tex. Cr.R. 424, 219 S.W. 474, the appointment of an interpreter is a matter for the sound discretion of the trial judge and only an abuse of discretion will call for a reversal.

In Brown v. State, Tex.Cr.App., 59 S.W. 1118, the court noted there was no requirement that an interpreter should be unbiased as far as the accused is concerned. In Tores v. State, Tex.Cr.App., 63 S.W. 880, 881, the county attorney was appointed to act as interpreter, and this court upheld such action. And in Sellers v. State, 61 Tex.Cr.R. 140, 134 S.W. 348, even the complaining witness acted as interpreter without there being an abuse of discretion shown.

There being no showing of a lack of fairness or impartiality on the part of the interpreter Garza, no error is shown. See 61 Tex.Jur.2d, Witnesses, Sec. 138, p. 707.

The judgment is affirmed.