AFFIRMED; and Opinion Filed March 26, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00279-CR

No. 05-12-00295-CR

**JOHN TERRY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F09-16254-P & F09-16253-P**

## OPINION

Before Justices Lang-Miers, Murphy, and Fillmore
Opinion by Justice Fillmore

A jury convicted John Terry of two offenses of aggravated sexual assault of a child and assessed punishment on each offense of a $5000 fine and seven years' imprisonment, but recommended that the imprisonment be probated. In six issues, Terry argues the trial court (1) violated Terry's right to confront the witnesses against him and abused its discretion under the rules of evidence by not allowing Terry to impeach witnesses with evidence of the complainant's motive to fabricate the charges against him, (2) erred by denying Terry's motion for new trial, (3) erred by permitting the State to impeach Terry on his post-arrest silence, and (4) violated article 36.16 of the code of criminal procedure by amending one of the jury charges in the guilt phase of the trial after reading the charge to the jury. We affirm the trial court's judgment.

# Background[1]

S.B., who was fifteen years old at the time of trial, testified that Terry was her mother's stepbrother. From 2002 through 2004, when S.B. was between six and eight years old, Terry lived with S.B.'s grandmother, L.T., and several other relatives. S.B. and her brother, M.B., would visit L.T. for weekends during the school year and for as long as a week during the summer. S.B. testified that during the visits, Terry rubbed his penis on her "butt," put his penis in her mouth, and touched her chest.

When S.B. was thirteen years old, her mother, T.B., had a discussion with her about Facebook and texting. T.B. testified that S.B. became angry and defensive and kept saying that she was "not going to do anything like that." T.B. asked S.B. if somebody had already "done something" or "sent something" to her. S.B. initially would not respond to T.B.'s questions. After approximately two-and-one-half hours, S.B. "shook her head" when T.B. asked if somebody had done something to her. T.B. began naming individuals. S.B. shook her head "no" after each name. When T.B. named Terry, S.B. shook her head "yes" and started crying. S.B. told T.B. that Terry put his penis in her mouth and in her "bottom area" and rubbed her chest.

After the outcry, S.B. began attending counseling with Melissa Dobbins. Dobbins testified at trial during the State's case-in-chief and brought the records of her sessions with S.B. The following morning, Terry's counsel stated he had been provided documents "late yesterday" relating to five additional counseling sessions that S.B. had with Dobbins. The record relating to one of those sessions indicated that, approximately nine months after S.B.'s outcry, T.B. discussed with Dobbins a possible "sexting" incident involving S.B. and a "male peer" at school.

---

[1] Terry has not challenged the sufficiency of the evidence to support the convictions. Accordingly, we recite only those facts necessary to address Terry's complaints on appeal.

The counseling records indicate T.B. told Dobbins that, when questioned about the incident, S.B. became very emotional and admitted she sent a picture to the boy.

S.B. had returned to school and was not present at trial at the time Terry's counsel raised the issue of the additional counseling records. However, the trial court allowed Terry's counsel to question T.B. outside the presence of the jury. T.B. testified that when she was "accusing" S.B. of sending the picture, S.B. admitted doing so. However, S.B. later told T.B. that she said "that because I guess that's what you want to hear and that's what everybody is accusing me of." S.B. then denied there was a picture and said it "was rumors."

Terry's counsel stated that he wanted to use the evidence to show S.B. initially admitted to sending the picture, but later denied it. Terry's counsel argued he should be allowed to cross-examine S.B. on the "sexting" incident because both the outcry against Terry and S.B.'s admission that she sent a photograph occurred when T.B. was accusing or lecturing S.B. about certain conduct. Because S.B. claimed she told T.B. what T.B. "wanted to hear" pertaining to the "sexting" incident, the jury could determine that S.B. also told T.B. what she wanted to hear regarding the outcry against Terry. The trial court denied Terry's request to question S.B. and T.B. about the incident.

Terry testified that he did not abuse S.B. He also offered evidence that the abuse could not have occurred at the times and places described by S.B.

The jury convicted Terry of two offenses of aggravated sexual assault of a child. Terry filed a motion for new trial asserting, among other grounds, that the trial court's refusal to allow him to recall and cross-examine T.B. and S.B. on the "sexting" incident violated his right to confront the witnesses against him. After two non-evidentiary hearings, the trial court denied the motion for new trial. At Terry's request, the trial court made findings of fact and conclusions of law. As relevant to this appeal, the trial court found (1) "sexting" is the sending of digital text

—3—

messages containing suggestive, provocative, or explicit sexual photographs; (2) S.B. told T.B. that she had texted a sexual picture of herself to a boy; (3) S.B. later denied texting such a picture; (4) on the eve of trial, the State informed the defense that no "sexting" had occurred; (5) when S.B. and T.B. testified, the defense knew of the allegation that S.B. had "sexted," and had been told by the State it was not true, but did not cross-examine S.B. or T.B. about it; (6) the additional therapy notes that were given to the defense after S.B. and T.B. testified contained references to S.B. having told T.B. about "sexting" a picture of herself and later recanting, both of which incidents were already known to the defense; (7) T.B. testified, outside the presence of the jury, about the "sexting" incident and testified S.B. had stated that she did not send a picture; and (8) the trial court, relying on rule of evidence 608(b), refused to allow the defense to recall S.B. and T.B. to cross-examine them about S.B.'s lie. The trial court concluded S.B.'s lie did not deal with a specific bias, motive, or interest to testify in a particular matter and the incident about which she lied did not involve Terry. Rather, it was a specific act or conduct that Terry wanted to use to impeach S.B.'s character for truthfulness and, therefore, was inadmissible under rule of evidence 608(b).

## Cross-Examination of S.B. and T.B.

In his first four issues, Terry alleges the trial court erred by denying his request to cross-examine S.B. and T.B. about the "sexting" incident and by denying his motion for new trial on that ground. Relying on *Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009), Terry argues the evidence that S.B. lied to her mother about the "sexting" incident was admissible because it established S.B.'s "motive to fabricate and her modus operandi when fabricating." Terry asserts the evidence was admissible under the rules of evidence and, because the rules of evidence permitted the use of the evidence to impeach S.B., he was denied his right to confront the witnesses against him under the Sixth Amendment to the United States Constitution.

-4-

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion by excluding evidence only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

We also review a trial court's ruling on a motion for new trial for an abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). In conducting our review, we may not substitute our judgment for that of the trial court. *Id.* Rather, we decide only whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

*Analysis*

The Sixth Amendment[2] right to confront witnesses also includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. U.S. CONST. amend. VI; *Hammer*, 296 S.W.3d at 561 (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The scope of permissible cross-examination is "necessarily broad." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996); *Reynolds v. State*, 371 S.W.3d 511, 520 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The broad scope of cross-

---

[2] The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. CONST. amend. VI.

examination does not mean, however, that a defendant can explore every possible avenue of inquiry. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Hammer*, 296 S.W.3d at 561 ("This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination.").

Generally, the Sixth Amendment right to present evidence and to cross-examine witnesses does not conflict with the corresponding rights under state evidentiary rules. *Hammer*, 296 S.W.3d at 561 (citing *United States v. Scheffer*, 523 U.S. 303, 316 (1998); *Potier v. State*, 68 S.W.3d 657, 660–62 (Tex. Crim. App. 2002)). Therefore, we can resolve most questions regarding cross-examination by looking to the Texas Rules of Evidence. *Hammer*, 296 S.W.3d at 561. "In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) [of the Texas Rules of Evidence] requires that the Constitution of the United States controls over the evidentiary rule." *Id.*; *see also Billodeau*, 277 S.W.3d at 40. However, "[t]he Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent with Texas evidence law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence." *Hammer*, 296 S.W.3d at 566.

All witnesses may be cross-examined on any matter relevant to any issue in the case, including credibility. TEX. R. EVID. 611(b). But, rule of evidence 608(b) prohibits cross-examination on specific instances of conduct of a witness, other than a criminal conviction as provided in rule 609(a), for the purpose of attacking the witness's credibility. TEX. R. EVID. 608(b). Further, rule of evidence 412(b) provides that evidence of specific instances of conduct relating to a complaining witness's past sexual behavior is generally not admissible in a criminal trial for aggravated sexual assault. TEX. R. EVID. 412(b). However, as relevant here, the evidence may be admissible if it relates to the motive or bias of the complainant or is

constitutionally required to be admitted and its probative value outweighs the danger of unfair prejudice. TEX. R. EVID. 412(b)(2)(C),(E), (b)(3); *see also* TEX. R. EVID. 404(b), 613(b).

In sexual assault cases, the credibility of the complainant and the defendant are often dispositve issues. *Hammer*, 296 S.W.3d at 561–62. However, a distinction must be made between an attack on the general credibility of the witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 562 (quoting *Davis*, 415 U.S. at 316). The defendant does not have an absolute right to impeach the general credibility of a witness, but the Constitution could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives, biases, and prejudices to such an extent he could not present a vital defensive theory. *Id.* at 562–63; *see also Billodeau*, 277 S.W.3d at 42–43.

It is undisputed that S.B. lied about the "sexting" incident, either in the first conversation with T.B. in which she admitted "sexting" or in the later conversation in which she denied doing so. However, the "sexting" incident did not involve an accusation by S.B. against anybody. Rather, the "sexting" incident related to alleged conduct by S.B., did not involve Terry, and was not logically connected to the allegations against Terry. This evidence is not relevant as proof of bias, prejudice, or ulterior motive by S.B. to accuse Terry of sexually assaulting her years earlier. *See Lopez v. State*, 18 S.W.3d 220, 225–26 (Tex. Crim. App. 2000) ("Without proof that the prior accusation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [the complainant's] credibility in this case."). Rather, the attempted impeachment was an attack on S.B.'s general credibility *i.e.*, S.B. lied to her mother about the sexting incident, so it can be inferred that she is lying about Terry sexually assaulting her. *See Clay v. State*, 390 S.W.3d 1, 12–13 (Tex. App.—Texarkana 2012, no pet. h.) (evidence

teenager lied to her parents about where she was going at night was not relevant as proof of bias, prejudice, or ulterior motive for accusing defendant of sexually assaulting her).[3]

The trial court found the evidence concerning the "sexting" incident involved a specific instance of conduct which Terry sought to present as a general attack on credibility and was, therefore, inadmissible. *See* TEX. R. EVID. 608(b). This ruling was in the zone of reasonable disagreement and, therefore, the trial court did not abuse its discretion in excluding the evidence. Further, because the evidence was inadmissible, the trial court did not abuse its discretion by denying Terry's motion for new trial. We resolve Terry's first four issues against him.

### Post-Arrest Silence

In his fifth issue, Terry contends his rights under the Fifth Amendment to the United States Constitution[4] and article I, section 10 of the Texas Constitution[5] were violated when the trial court allowed the prosecutor to impeach Terry on his post-arrest silence. T.B. testified without objection that Terry did not contact her or, to her knowledge, any family members following his arrest. In response to this testimony, Terry testified during his direct examination that he had not spoken with S.B. or her family since his arrest because he understood "everybody was looking for me, going to kill me" and because he "didn't know what to say."

On cross-examination, the prosecutor asked Terry why, if he was innocent, he did not call T.B. after his arrest and ask, "What's happening?" Terry's counsel objected on the ground the prosecutor was "inappropriately trying to use [Terry's] silence against him." The trial court

---

[3] This case is, therefore, distinguishable from *Hammer* in which the defendant attempted to offer evidence that the complainant was angry with the defendant, her father, for taking her to the hospital for a sexual assault examination because he wanted to prove the complainant had sexual intercourse. *Hammer*, 296 S.W.3d at 567. The complainant in *Hammer* was evidently so upset that she threatened to commit suicide and was admitted to a state hospital. *Id.* The complainant made the allegations against the defendant shortly after she was released from the hospital. *Id.* The court of criminal appeals concluded this was strong evidence of the complainant's motive to falsely accuse the defendant of sexual assault and the trial court erred by excluding it. *Id.*

[4] The Fifth Amendment provides, "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. CONST. amend. V.

[5] Article 1, section 10 of the Texas Constitution provides, in relevant part, than an accused in a criminal prosecution "shall not be compelled to give evidence against himself." TEX. CONST. art. I, § 10.

overruled the objection, and Terry responded that he had heard "they were trying to kill me." The prosecutor then asked Terry, without objection, whether he contacted L.T. and his father after his arrest. Terry said that he went to their house as soon as he was released from jail. The prosecutor then returned to why Terry had not contacted T.B., asking, without objection, that "an innocent man would call his sister and say, 'What is going on here,' wouldn't he?" Terry responded an innocent man would not.

When the same testimony is admitted without objection elsewhere during the trial, the defendant waives any complaint he may have had regarding the admissibility of the testimony. *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004). By not objecting every time a witness was questioned about Terry's post-arrest silence, Terry waived any error by the trial court in overruling his objection. We resolve Terry's fifth issue against him.

## Jury Charge

In his sixth issue, Terry contends the trial court violated article 36.16 of the code of criminal procedure by amending the jury charge in cause number F09-16253-P after the charge had been read to the jury. In cause number F09-16253-P, Terry was charged with intentionally and knowingly causing his sexual organ to contact and penetrate S.B.'s anus. The jury charge prepared by the trial court stated, "A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus of a child by any means, and the victim is younger than 14 years of age." The application paragraph of the charge stated:

> If you find and believe from the evidence beyond a reasonable doubt that the defendant, John Terry, on or about July 8, 2004, in Dallas County, Texas, unlawfully and knowingly or intentionally caused the penetration of the anus of [S.B.], a child, who was not then his spouse, by an object, his sexual organ, and that she at the time of the offense, if any, was younger than 14 years of age, you will find the defendant guilty of aggravated sexual assault of a child under the age of 14, as charged in the indictment. If you do not so find, or you have a reasonable doubt thereof, you will find the defendant not guilty.

–9–

Neither Terry nor the State made any objections to the charge.

When the trial court read the charge to the jury, it stated, "A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes *the contact* or penetration of the anus of a child by any means and the victim is younger than 14 years of age." (emphasis added). Terry did not object to the trial court's inclusion of the words "the contact" in the charge as read to the jury. The trial court read the application paragraph of the charge as written.

After reading the charge, the trial court stated, "I have allotted 15 minutes per side for argument. The State will open. Mr. –." At this point, the prosecutor requested to approach the bench. After an off-the-record conference, the trial court stated it was amending the charge to read "causes the contact or penetration" in both the definition of the offense and the application paragraph. Terry's counsel objected to the change, stating there had been no objection to the charge at the charge conference. The trial court construed the objection as asserting it was "error for me to change my charge after" it had been read. The trial court overruled the objection and amended the charge.

Terry argues that article 36.16 of the code of criminal procedure prohibited the trial court from amending the charge after it had been read to the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006). The applicable portion of article 36.16 provides, "After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony. . . ." *Id.* Terry asserts that none of the exceptions in the statute apply and, therefore, the trial court committed reversible error by amending the charge.

The court of criminal appeals has concluded that a trial court may withdraw and correct its charge if it is convinced an erroneous charge has been given. *Smith v. State*, 898 S.W.2d 838, 854–55 (Tex. Crim. App. 1995); *Bustillos v. State*, 464 S.W.2d 118, 125 (Tex. Crim. App. 1971) ("the court may before verdict withdraw and correct its charge if convinced an erroneous charge has been given"); *Chambers v. State*, 379 S.W.2d 907, 908 (Tex. Crim. App. 1964) ("the court's amending [its] charge in order to correctly state the law" does not constitute reversible error); *see also Gaines v. State*, 710 S.W.2d 630, 633 (Tex. App.—Dallas 1986, pet. ref'd) ("The court may, after arguments have begun but before the verdict, withdraw and correct its charge if the court is convinced that an erroneous charge has been given.").

Terry did not object at trial when the trial court read the definition portion of the charge to include contact with S.B.'s anus. Further, he did not complain in the trial court, and does not complain on appeal, that the amendment made to the charge by the trial court was an incorrect statement of the law. Rather, his only complaint is directed toward the timing of the amendment. We conclude the trial court did not commit reversible error by amending the charge after it was read to the jury but before closing arguments by the prosecutor. *See Smith*, 898 S.W.2d at 854–55. We resolve Terry's sixth issue against him.

We affirm the trial court's judgments.

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
Tex. R. App. P. 47

120279F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOHN TERRY, Appellant

No. 05-12-00279-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F09-16254-P.
Opinion delivered by Justice Fillmore.
Justices Lang-Miers and Murphy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of March, 2013.

ROBERT M. FILLMORE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN TERRY, Appellant

No. 05-12-00295-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F09-16253-P.
Opinion delivered by Justice Fillmore.
Justices Lang-Miers and Murphy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of March, 2013.

ROBERT M. FILLMORE
JUSTICE