**Jeffrey GOINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 86 100 CR.**

Court of Appeals of Texas, Beaumont.

Dec. 17, 1986.

Willard J. Hall, Jr., Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

OPINION

BROOKSHIRE, Justice.

In a juried proceeding, the Appellant was found guilty of unauthorized use of a motor vehicle. The jury also found that Appellant had been convicted of a previous felony offense, which had been alleged in an enhancement paragraph. The punish-

ment was assessed at 15 years in the Texas Department of Corrections.

In a vigorous brief, Appellant argues that the evidence is insufficient to sustain the conviction because the State established merely that the owner did not give permission, contending that the word "permission" was not equivalent to "consent". Hence, the lack of consent or the lack of effective consent was not established and Appellant should be acquitted by us. There is a logical version of the evidence, having strong probative force, which the jury could have properly believed, proving lack of consent.

### The Background of the Case

Patricia Jean Carter lived on Major Drive in Beaumont. She conducted a business known as Crossroad Stables, boarding and taking care of other people's horses. On October 30, 1985, about midday, she was working at her stable. She was approached by a young man. She talked to the young man. The young man was identified as the Appellant. The conversation concerned the sale of a car that Patricia had advertised. The car was a 1979 Corvette, two toned, cream colored over burgundy, license number AZV 994. Patricia owned the car. She was asking $8,500.00, having advertised the same through the "auto trader", which was a magazine that publishes a small picture of the vehicle and a short write-up or description of the vehicle with the sales price. After a conversation about the car between the Appellant and Patricia, the Appellant wanted to drive it. He said he wanted a "Vette". Both Patricia and Goins took the car out for a drive which was approximately 2½ miles or more in length. They discussed the car. A part of the conversation was to the effect that the car needed a little brake fluid. The brakes were somewhat low. Patricia told Goins that. Goins said that was not a problem but he had to wait for his dad to get off work before a deal could be made. According to Goins, his dad would get off work about 5:00 p.m. The Corvette was driven back to the house of Patricia, which was nearby the Crossroads Stables. The

Appellant did not identify himself, by name, to Patricia. The Appellant, again, approached Patricia at the stables, saying that he wanted to go over to the house and look at the Corvette one more time. Patricia knew her son, Ty, was at the house. She did not give Goins permission to drive the "Vette" when he went to look at the car "one more time". Patricia did not authorize her son to consent to Goins driving the car a second time.

In about the middle of the afternoon, Ty called his mother, Patricia, working at the stable. Ty asked his mother if she had given Goins permission to drive the car a second time. Patricia said that she had not. While talking on the telephone, Ty reported that the Appellant was driving the car out the front gate. At first, Patricia did not get nervous about it, but thought the Appellant just wanted to drive it one more time. She decided to give him a little while to return the Corvette, but he did not show up. After an hour or so had passed, Patricia called the sheriff's department. Patricia did not give Appellant permission to go in the car for even a little while. Patricia repeatedly testified that she did not ever give Goins permission to drive the Corvette other than the one time when he drove it with Patricia aboard. She specifically swore that she never gave him permission to take the Corvette outside of Jefferson County. The car was later located in Dallas. The location of the car was told by Goins to a law enforcement officer, Goins being detained at the time.

Ty, the son, did not give the Appellant permission to drive the car at any time. Patricia definitely identified the Appellant in court as the person who drove away her Corvette.

Patricia ultimately recovered her car at a police impound in Dallas. The stereo had been removed and the rear speakers had been removed. The steering wheel had sustained damage. The ignition to the motor had to be replaced. The Corvette had to be transported back to Beaumont on a low-boy trailer.

Ty Carter definitely remembered the events of October 30, 1985. He knew that his mother was trying to sell a 1979 Corvette. Ty saw the person who came to inquire about the car who was the same person he identified as the Appellant in the courtroom. He knew that the Appellant test-drove the car with Patricia aboard. They returned the Corvette to the dwelling house. Later, the Appellant and Patricia went over to her place of business, the stables. The Corvette was left at the house. Later, the Appellant returned back to the house. Appellant was driving his own mother's car, which was described as a four door Grand Marquis. Patricia called her son and asked him to check the brake fluid which was found to be low. After this, Goins talked to Ty, Goins representing that Patricia had told him he could take the car and put fluid in it and see if it improved the brakes. At that point, Ty decided to check immediately with his mother by phone. During this conversation, Ty saw Goins drive out the driveway in the Corvette. The Marquis stayed in the driveway at the house. Ty definitely did not give him permission to drive the Corvette or to take the car to buy some brake fluid. No permission was given, at any time, by Ty to drive the car either in Jefferson County or outside of Jefferson County.

### Ty's Identification of Goins

We perceive that the evidence of Patricia and Ty was not shaken. This evidence was unequivocal and direct, which the jury obviously accepted. As we perceive it, Ty's identification of the Appellant was not discredited. Ty swore that he remembered what the Appellant was wearing on October 30, 1985. His clothing included a purple letterman's jacket and blue jeans. The letterman's jacket was an athletic letter. Ty swore that he had no doubt in his mind that the defendant sitting in the courtroom on the day of the trial was the same person that drove his mother's Corvette off on October 30, 1985. The "Vette" was recovered in December, 1985.

There was other probative evidence to sustain the conviction. We would not be justified in reciting all of it, thus making this opinion much too lengthy. There were slight inconsistencies in the evidence, but the jury had the duty to weigh these. The above account was, admittedly, the State's position, but the jury had the right to accept it.

But we find, under vigorous and artful direct examination by defense, that Patricia said:

"A I did not give him permission to go to the store and get brake fluid. When he left me he was going to look at the car. He did not even mention going to drive it again.

. . . .

"Q All right. But it's still your testimony that you never gave him permission to go down and get brake fluid and neither did Ty. Is that correct?

"A I did not give him permission to go get brake fluid.

. . . .

(Questions by the State:)

"Q So would you say based on your entire dealings with the defendant on this day that a fair summary of your testimony is that he did come there under false pretenses.

"A I would say that.

"Q He was trying to trick you?

"A I agree with that.

"Q And it appears that he was waiting for his opportunity to take your car.

"A Yes, sir.

"Q Would you say that in reference to Mr. Hall's telephone call to you the other day on the phone, that it would be a fair summary that he was trying to confuse you?

"A Extremely.

"MR. MILLER: Pass the witness.

We decide the following exploded Appellant's first 4 grounds of error.

### REDIRECT EXAMINATION

"BY MR. HALL:

"Q I just have a few more questions. Mrs. Carter, now isn't it the truth that

this young man deceived you into giving your consent to take this automobile?

"A No.

"Q That isn't what happened?

"A No. He did not get my consent.

"Q And you didn't tell me that the other day on the telephone?

"A I told you he did not get my consent. You kept saying what if this and if that—

"Q Um hum.

"A —and I said, if this, I possibly would have, but I didn't.

"Q All right. Now didn't I tell you the other day that I just wanted to get at the truth?

"A That's right.

"Q All right.

"MR. HALL: Pass the witness."

■ Reviewing the entire record, we overrule the first four grounds of error, contending "Evidence Insufficiency". We find that this conviction is valid under the due process standards of the *U.S. CONST. amend. V and XIV*. We determine that a rational trier of fact could have found, and did find, all the essential elements of the indicted offense beyond a reasonable doubt. We decide that this conviction is constitutionally valid under the United States Constitution and the Texas Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App. 1983, Opinion on Rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983, Opinion on Rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983, Opinion on Rehearing); *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983, Opinion on Rehearing), and *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984). *Chambers v. State*, 711 S.W.2d 240, (Tex.Crim. App.1986).

### Prosecutor's Remarks

■ Next, the Appellant urges that the prosecutor injected harmful, unsworn testimony before the jury and that a mistrial should have been declared. The pros-ecutor stated something to the effect that "[t]he State is down here today because the State feels it can meet that burden." The record shows this, as part of the opening remarks of the State's counsel:

"Burden of proof. Another legal presumption I want to take [sic] to you about. In a criminal trial the State has the burden. The State is down here today because the State feels it can meet that burden.

"MR. HALL: Objection, your Honor, bolstering.

"THE COURT: Sustain the objection.

"MR. HALL: As [sic] that the jury be instructed to disregard that last comment, your Honor.

"THE COURT: The jury will disregard the last comment by the prosecutor.

"MR. HALL: Move for a mistrial, your Honor.

"THE COURT: Mistrial denied."

The objection below was on the basis of impermissible bolstering, but the ground of error says that the prosecutor injected harmful, unsworn testimony. We decide that the ground of error on appeal is not the same as the objection at trial. Hence, nothing is presented for review. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Crim.App. 1979). We hold, nevertheless, that such remark was not inflammatory. The trial court sustained the bolstering objection and the court promptly and unequivocally instructed the jury to disregard "the last comment by the prosecutor." There is no error.

### Appellant's Counsel's Exchange with the District Judge

Grounds of error six and seven concern themselves with a rather spirited dialogue between Appellant's counsel and the District Judge. At oral argument, the Appellant's counselor strongly urged us not to write on these points of error. We yield to his importuning. There is no error, however, in grounds of error six and seven.

## The Reputation Witness

 Next, the Appellant argues that the trial court erred in "failing to grant Appellant's Motion for Mistrial after it was demonstrated that the Reputation Witness [Charles] Ashworth [a Beaumont detective] was not qualified to give an opinion" as to Appellant's reputation for being a peaceful and lawabiding citizen. The record contains:

"MR. HALL: Your Honor, in that case, that renders all of his testimony inadmissible. He said his reputation—it's based upon what he knows.

"THE COURT: I agree, sustain the objection.

"MR. HALL: And your Honor, I would like to request this jury disregard those last comments—officers testimony.

"THE COURT: *The jury will disregard all of the testimony of this witness.*

"MR. HALL: All right. And at this time, your Honor, I would like to request a mistrial.

"THE COURT: Mistrial denied.

"MR. HALL: Thank you, your Honor. Thank you, Detective Ashworth. That's all." (Emphasis ours)

There is no contention that this instruction by the court was inadequate. We determine that the jury could follow this unequivocal, dogmatic instruction by the trial judge. There is no error—certainly no harmful, reversible error. *TEX.CODE CRIM.PROC.ANN. art. 44.23* (Vernon Supp.1986).

The pen packet was in evidence and Goins' mother testified to 4 prior felony convictions against her son. Under this unusual record at the punishment phase, it was shown that on the 4 prior felony convictions, Goins was sentenced to 6 years in the Texas Department of Corrections. After he was released, he committed this fifth felony, being an unauthorized use of a motor vehicle. There is no reversible error.

On appeal, we are to view the evidence in a light most favorable to the verdict. *Chambers v. State,* 711 S.W.2d 240 (Tex. Crim.App.1986).

Overruling all of the Appellant's grounds of error, we affirm the judgment and sentence below.

AFFIRMED.[1]

---

1. Also, at oral argument, Appellant's counsel strongly urged us to publish our opinion. Again, we yield to his request.