William Robert OLIVER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–89–002 CR, 09–89–003 CR.

Court of Appeals of Texas,
Beaumont.

March 18, 1992.

As Corrected March 23, 1992.

Rehearing Denied April 2, 1992.

Kenneth W. Smith, Houston, for appellant.

James A. Clark, Crim. Dist. Atty., Woodville, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION ON REMAND

BURGESS, Justice.

The jury convicted William Robert Oliver of possession of a controlled substance, less than 28 grams of methamphetamine and more than 400 grams of phenylacetone, and assessed punishment at, respectively, twenty years' confinement in the Texas Department of Corrections [1] and a $10,000 fine and ninety-nine years and a $100,000 fine. This court reversed the judgment. *Oliver v. State*, 787 S.W.2d 170 (Tex.App.—Beaumont 1990). The court of criminal appeals reversed the decision of this court with instructions to remand the causes to the trial court with instructions to conduct a hearing under TEX.CODE CRIM. PROC.ANN. art. 35.261 (Vernon 1989) pursuant to *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *State v. Oliver*, 808 S.W.2d 492 (Tex.Crim.App. 1991). The trial court conducted the hearing and found that the state did not challenge prospective jurors on the basis of race.

The standard of review in *Powers* cases is the same as in other cases involving *Batson* [2] issues: the appellate court is to review the trial judge's findings of fact to determine if they are adequately supported by the record. *Salazar v. State*, 818 S.W.2d 405 (Tex.Crim.App.1991) (not yet reported). We must review the evidence in the light most favorable to the trial judge's rulings. *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988) (opinion on rehearing). We may reverse the judgment of the trial court only if its findings are "clearly erroneous". *Whitsey v. State*, 796 S.W.2d 707 (Tex.Crim.App.1990) (opinion on rehearing).

Of the first thirty-seven venire members, five were struck for cause. Of those remaining, nine were black. The state struck eight black and two white venire members.

The prosecutor believed that the eight black jurors were "inattentive" and "disinterested". The six venire members who were black females were also "hostile". *There is absolutely no evidence in the record of the voir dire to even remotely suggest that any of these jurors were in fact inattentive, uninterested, and hostile.* Disinterest is not only not a fault, a juror who is not "disinterested" is probably subject to a challenge for cause. *See* TEX.CODE CRIM.PROC.ANN. art. 35.16 (Vernon 1989). The courts of appeal have been reluctant to condemn the use of peremptory strikes to remove inattentive jurors. *See Moore v. State*, 811 S.W.2d 197 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) and *Daniels v. State*, 768 S.W.2d 314 (Tex.App.—Tyler 1988, pet. ref'd); *compare Woods v. State*, 801 S.W.2d 932 (Tex.App.—Austin 1990, pet. ref'd) and *Smith v. State*, 790 S.W.2d 794 (Tex.App.—Beaumont 1990, no pet.). Here the prosecutor makes a subjective claim, unsupported by any objective evidence in the record, that eight of the nine jurors on the venire were so inattentive that he felt he needed to strike them, but none of the twenty-three white jurors on the venire were likewise inattentive. The explanation is either a bald pretext for discrimination or an expression of the prosecutor's unconscious attitudes towards people of color. Either way, we cannot say the trial court's finding that the prosecutor's reason for striking each of these venire members was racially neutral is not

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

2. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

clearly erroneous, when based on such an explanation.

■ The prosecutor explained that he struck black juror nos. 1, 17, and 34, because they worked at hospitals. The prosecutor was involved in an unrelated suit with a doctor who worked out of a hospital, so he feared that these venire members might be prejudiced against him. The prosecutor thus ascribed a group characteristic, albeit a nonracial group characteristic, to specific venire members without questioning the individuals to see if the group characteristics applied to the individual juror. This practice was disapproved in *Whitsey*, 796 S.W.2d at 727. In the absence of questions applying the group characteristic to the individual, it was clearly erroneous for the trial court to find that the strikes were racially neutral based on the fact that they worked at hospitals.

■ The prosecutor explained that he struck black jurors 30 and 32, and white juror 33, because he wanted to reach juror no. 36, the white wife of a state trooper the prosecutor felt would be sympathetic to the state. This is not a racially neutral reason for striking these jurors. The "racially neutral reason" for the strike must apply to the venire member, not to some factor applicable to a third party, or to some random caprice unrelated to the potential juror's unbiased service, such as the phases of the moon, or a toss of the coin, or the fact that a juror's name reminds the prosecutor of a Chuck Berry song.[3] If the trial court based its finding that the prosecutor provided racially neutral explanations for his strikes on these reasons, the finding is clearly erroneous.

■ The prosecutor explained that he struck black juror no. 11 and white juror no. 28 because they worked for Keller.[4] There was a drug investigation at Keller, and he feared that people who worked out there where drugs were sold would develop a blasé attitude towards drugs. Again, the prosecutor impermissibly ascribed a group bias without asking the juror even one

question to determine if such a bias might apply to the individual.

■ The prosecutor struck black venire member no. 11, Sharon Barclay, because she might be related to Obie Barclay, whom he had prosecuted. Likewise, he struck black venire member no. 12, Doris Barlow, because she might be related to Curtis Barlow, who had been arrested. The prosecutor apparently did not have similar misgivings about white juror no. 13, whose son had a criminal record, or white juror no. 22, whose son had been convicted and put on probation, or white juror no. 19, whose brother-in-law had been convicted. The prosecutor did not ask any questions to confirm his suspicions. He explained that he did not ask any questions to confirm his suspicions because he did not want to tip his hand to the defense lawyer, a Houstonian. This may explain why the question was not asked, but does not transform a silent record into a racially neutral explanation for excluding black people from jury service. A finding that a strike based on this reason was racially neutral would be clearly erroneous.

■ The prosecutor struck both juror nos. 8 and 32 because each stated she was not working but did not say that she was a housewife. When white juror no. 14 said she wasn't working, the prosecutor asked her if she was a housewife. When white juror no. 27 said she wasn't working, the prosecutor asked if she was a housewife. He did not ask the follow-up question of two black jurors, nos. 8 and 32. The prosecution relies on the *absence of evidence* in the record to support its explanations. The prosecutor asked disparate questions of the blacks and the whites in similar circumstances, where those circumstances were the basis for the strikes. The trial court could not rely on those explanations in finding that the strikes were not racially motivated.

■ The prosecutor said he struck black jurors nos. 1, 8, 11, 17, and 30 because he didn't know them. Lack of personal ac-

---

**3.** The prosecutor's explanation for striking black venire member No. 32, Mabellene Brown.

**4.** The prosecutor offered no further description of "Keller".

quaintance with a juror is not a racially neutral explanation for utilizing a peremptory strike. The state is not entitled to a jury of twelve folks who know him. The defense attorney asked the venire if any of the jurors knew anyone in law enforcement, including someone in the district attorney's office, and not one person admitted of knowing the prosecutor. Only black jurors were objectionable to the prosecutor based on that ground. The state's disparate application of its criteria for service eviscerated its explanation.

No other reasons were produced by the state to explain the use of the peremptory challenges.

The trial judge said, at the conclusion of the art. 35.261 hearing, that he did not take the prosecutor's explanations at face value and noted that the prosecutor typically did not ask many questions. The trial judge said he read the voir dire, but did not indicate that he recalled the venire members' demeanor or observed it at the time. We are not bound to the trial court's finding just because it involves a credibility determination. See Whitsey, 796 S.W.2d at 725. A prosecutor would not need to ask many questions if he instead relied upon base stereotypes; i.e., blacks would rather be somewhere else than serving on a jury, blacks aren't interested in the judicial system unless they're the defendant, black women are hostile to prosecutors. But neither would he determine the objectivity and qualifications of the jurors, based upon the true attitudes and abilities of the people he encounters during jury selection.

The state argues that the prosecution historically strikes blacks only because of the fear that black people are sympathetic to black defendants, thus the motivation to strike the black jurors is absent in this case. If the statement is true, it only makes the use of the peremptory challenges foolish as well as discriminatory.

We are not prepared to ignore the violation of the equal protection rights of the black venire members, rights guaranteed by the fourteenth amendment to the United States Constitution, recognized in Powers and protected by the procedures in article 35.261. If the exercise of even one peremptory challenge was racially motivated, the entire jury selection process is invalidated and appellant is entitled to a new trial. Keeton v. State, 724 S.W.2d 58 (Tex. Crim.App.1989). We are left with the definite and firm conviction that a mistake has been committed. See Whitsey, 796 S.W.2d at 728. We hold that the trial court's findings are clearly erroneous. We hold that the state used its peremptory challenges to exclude one or more qualified black jurors from jury service on the basis of race. The trial court erred in failing to quash the jury panel. We reverse the judgment of the trial court and remand the case for new trial.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, concurring.

This concurrence is with the results only of the Court's opinion. Under the current, governing authorities and decisional precedences, as I understand them, this concurrence is proper as to the reversal of the judgment of the trial court and the remand of the case for a new trial.

My comment is that I do not perceive that any identifiable racial group is not interested in fair but effective law enforcement. Furthermore, my understanding of the present law is that the prosecution does not have the right, or the equality of standing, to question the peremptory challenges made by the defendant. Prophetically, Batson and its sequelae will probably terminate in the destruction of peremptory challenges as such. But for the present I would advocate a more level and balanced trial proceeding.

WALKER, Chief Justice, dissenting.

William Robert Oliver was tried in December, 1988. The appellate process began through this Court making its way finally to our Court of Criminal Appeals which issued its mandate to this Court on May 17, 1991, reversing this Ninth Court with instructions to remand the Oliver case back to the trial court to conduct a hearing

under Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989). We complied as did the trial court.

On July 1, 1991, the art. 35.261 hearing was held. Mr. Patrick O'Neal Hardy was the District Attorney in and for Tyler County, Texas at the time appellant was tried; and Mr. Hardy actually tried appellant's case himself. At the time of the art. 35.261 hearing, Mr. Hardy was no longer with the Tyler County District Attorney's office.

In my review of the record of the hearing in the light most favorable to the ruling made by trial judge Monte Lawlis,[1] I can find absolutely nothing requiring me to determine that Judge Lawlis' ruling was "clearly erroneous."

With regard to each black juror stricken, I believe Mr. Hardy complied with the present requirements of the law regarding race neutral explanations. *See, Moore v. Keller Industries, Inc.*, 948 F.2d 199 (5th Cir.1991).

The majority claims that Mr. Hardy's reasons given for striking the eight jurors were subjective and unsupported by objective evidence. I think the majority is requiring Mr. Hardy to come back two and one-half years later and prove beyond a reasonable doubt by objective evidence that race was not a factor in his strike consideration. I personally question that any person could do so for who can recall the vivid details and reasons for actions taken at such remote times, especially when there was no requirement to record or account for such actions because *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was not even applicable to white defendants?

Now, the majority assumes that Mr. Hardy's explanations are "either a bald pretext for discrimination or an expression of the prosecutor's unconscious attitudes towards people of color."

Unless I am mistaken, this Court has just found Mr. Hardy to be a racist, and not only Mr. Hardy, but also Judge Lawlis for refusing to recognize such discrimination or unconscious attitude. I am not ready to make that statement, nor does my understanding of the law since *Batson* require me to do so.

Philosophically and as a judicial representative, *see, Chisom v. Roemer*, 501 U.S. ——, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991), we are fast approaching the logical conclusion of the illogical premises born in *Batson*. Prophetically, *Batson* must end in the destruction of peremptory challenges for all parties. *See, Hill v. State*, 827 S.W.2d 860 (Tex.Crim.App.1992). What is left? Challenge for cause only? Frightening! Thus, enter *Batson* Phase II. *Batson* II revisits the process, only now we evaluate the racial neutrality or non-neutrality of each juror, both before and after verdict.

Clearly there exists more than sufficient remedies for civil rights violations without turning each trial, whether civil or criminal, into a continuing search for latent racism.

I would affirm the trial court's ruling.

---

**1.** *See, Salazar v. State,* 818 S.W.2d 405, 408 (Tex.Crim.App.1991).