**Wilbert Ray ADAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–292 CR.**

Court of Appeals of Texas, Beaumont.

Jan. 26, 1994.

---

Gary Coker, Beaumont, for appellant.

Guy James Gray, Dist. Atty., Jasper, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

A jury convicted Wilbert Ray Adams of delivery of a controlled substance, cocaine. Appellant pleaded "true" to one enhancement paragraph and "untrue" to another enhancement paragraph. The jury found the enhancement paragraphs "true" [1] and assessed punishment at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant raises five points of error. We shall address these points out of order.

Point of error five challenges the sufficiency of the evidence to support the jury's guilty verdict. Appellant cites no authority for this argument, but complains that the state failed to establish the chain of custody of the contraband. Arthur Lee Phillips testified that Adams handed him crack cocaine in exchange for twenty dollars. Phillips gave the "rock" to Detective Mike Wilson, who bagged and marked it. The evidence remained in Wilson's possession or under lock and key until he mailed it to the Department of Public Safety laboratory by certified mail, return receipt requested. The evidence was never tampered with, and appellant does not suggest that the evidence was tampered with. The DPS chemist who received the evidence at the laboratory and

---

1. We note that the punishment charge did not instruct the jury on the range of punishment should it find "untrue" to one or both of the enhancement paragraphs, nor was the jury provided a verdict form for either possibility.

actually performed the analysis testified to the laboratory procedure for receiving and logging evidence, but the chemist who opened the envelope and assigned the number did not testify. Once the chain of custody is established into the laboratory, any further objection goes to the weight of the evidence and not its admissibility. *Medellin v. State,* 617 S.W.2d 229 (Tex.Crim.App. 1981). Given the evidence before it, the jury could have found each of the elements of the offense beyond a reasonable doubt. Point of error five is overruled.

Points of error three and four are directed towards argument by the prosecutor in the guilt stage of the trial:

Have you seen anybody on that witness stand that stated Mac Fraser had ever done anything wrong in his police career or that he was not credible? No.

Have you ever heard anything that Arthur Lee Phillips—who only one time, according to defense attorney—stated that he had worked undercover for police departments? That's not true. He said one time in the past six months for San Augustine. He also said Calcasieu Parish, Shreveport Police Department, Jasper Police Department—he's worked for a number of agencies.

But is there anything—anybody at all—when all this work defense counsel says they've done that stated that he in working—go undercover for whoever it is—J.C. Penney's—be it Fiesta, be it Wal–Mart, be it Calcaciau [sic] Parish, be it Jasper Police Department, San Augustine, anybody—that he has ever been proven—ever any misconduct? No, you didn't hear that.

What about Mike Wilson? Is there anybody that's taken the witness stand in all the work done by defense counsel that stated, in the nine years with Jasper Police Department, that there is any misconduct on Officer Wilson's part? No. *In fact, Ladies and Gentlemen, in the very jury panel you are sitting in you heard a number of people say all three of these persons are credible.*

*And you saw a number of people that were disqualified for the same reason—because they were going to believe whatever these two gentleman [sic] and Arthur Lee Phillips said.*

[Defense Counsel:] Object, Your Honor. He's testifying about facts that are not in evidence in this case.

The Court: The objection is overruled.

(Emphasis added).

■ Point of error four complains the prosecutor's argument constitutes improper bolstering. The sole trial objection to this argument was that it raised matters not in evidence. We will not review a complaint on appeal which differs from the objection at trial. *Soto v. State,* 810 S.W.2d 861 (Tex. App.—Fort Worth 1991, pet. ref'd); *Goins v. State,* 723 S.W.2d 212 (Tex.App.—Beaumont 1986, no pet.). Point of error four is overruled.

■ Point of error three urges the prosecutor's argument injected facts not in the record. The state argues that the argument was proper because the jurors heard the venirepersons' comments during voir dire of the venire. Venireperson No. 3, Wayne DuBose, was Police Administrator for the City of Jasper police department for over fifteen years. The following transpired during defense counsel's voir dire:

[Defense Counsel:] Yes, sir. Now in this case we're going to have testimony from police officers, and we're going to have testimony from just normal citizens. Does that—the background that you have had with the Jasper Police Department, do you feel like you would tend to make the police officers' testimony be a little more credible?

MR. DUBOSE: Well, I've got a lot of credibility I'd have to give these particular officers after working with them fifteen, twenty years.

Further discussion held outside the hearing of the venire resulted in a successful challenge for cause for this venireperson. Voir dire continued, as follows:

[Defense Counsel:] Other than Mr. DuBose, does anyone feel that there is anything about this Detective Mike Wilson as far as you knowing him that might have

any effect on the outcome of this case? Mrs. Lacy?

[Venireperson No. 23, Lois Lacy] Yeah. I know him. I've worked with him through the PTA and hospital, and my husband currently is the City Manager. So knowing him—and I would give him a lot of credit as to their testimony.

Again, further discussion held outside the hearing of the remainder of the venire resulted in a successful challenge for cause and Mrs. Lacy was excused from the panel. Then venireperson No. 4, Gary Gatlin, revealed that he was the City Attorney, and the following occurred:

[Defense Counsel:] Being the City Attorney, do you feel like given the fact that the State's witnesses are predominately [sic] city police officers, do you think that will weigh in your decision in this case?

A. I worked with Officer Wilson and—Detective Wilson—and Fraser before. I think they're credible persons.

Further proceedings held out of the hearing of the venire resulted in a successful challenge for cause as to this venireperson as well. The Chief Juvenile Probation Officer for the First Judicial District was also on the venire and expressed a positive opinion of the officers' credibility. However, the trial court denied the challenge for cause as to this venireperson so the prosecutor was apparently not referring to him in his argument. Venireperson No. 15, Gilbert Fraser, identified himself as Jasper Police Department Detective Sergeant Mac Fraser when he was called as the first State's witness at trial. Although he was not questioned during the voir dire, he was one of the witnesses whose credibility was at issue.

■ A prosecutor may not go outside the record to bolster the credibility of a witness by unsworn testimony. *Menefee v. State,* 614 S.W.2d 167 (Tex.Crim.App.1981). The state argues that the jury observed the voir dire and could draw the conclusions suggested by the prosecutor from the fact that these particular venirepersons were excused. We disagree with the state's characterization of the voir dire.

■ There are four permissible areas of jury argument: 1) summation of the evidence; 2) reasonable deduction from the evidence; 3) answer to argument of opposing counsel; and 4) plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230 (Tex. Crim.App.1973). No rational argument can be made that the prosecutor's argument in this case fell within any of these areas. The comments by the venire members are not evidence in the case. For instance, the state could not refer to matters occurring during voir dire to meet a challenge to the sufficiency of the evidence. Although the venireperson's responses were elicited during examination by defense counsel, such is a necessary part of the jury selection process and cannot be characterized as argument of counsel. Attorneys must be free to inquire into the prejudices of the venirepersons without having the responses argued to the jury for the truth of the matter stated. The prosecutor's argument was improper.

In considering argument that a witness had passed police scrutiny, the court of criminal appeals stated: "Patently, the determination of the credibility of a witness is the job of the factfinder, not investigators and prosecutors. It is thus improper to suggest to the jury that they should defer to another's assessment of the truthfulness of testimony, no matter how 'experienced' that other may be." *Gardner v. State,* 730 S.W.2d 675, 698 (Tex. Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). The argument in this case is even more egregious because the prosecutor suggested that a disputed factual matter—the truthfulness of the testimony of the State's witnesses—was proved by the preconceived opinions of people in the same position as the members of the jury. These venirepersons were excused from jury service for impermissible bias on the very matter the prosecutor argued to the panel. The prosecutor essentially argued to the jury that the stricken jurors were biased so the jury should be, too. This is not a permissible inference the State may draw from matters heard by the jury before the panel was seated and sworn. The argument injected new and harmful facts into the case. The trial court erred in overruling appellant's

objection to the argument by the State's attorney. Point of error three is sustained.

■ The first two points of error challenge the trial court's ruling that the State's use of its peremptory challenges was not racially motivated. Point of error one urges the trial court erred in allowing the State to challenge prospective jurors on the basis of race, a practice prohibited by the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712 (1986). Point of error two contends the trial court erred in not allowing defense counsel to examine certain police officers in the *Batson* hearing.

The state exercised six of its strikes against blacks to remove all of the blacks from the jury. The prosecutor stated as a reason for each of these strikes that the venireperson knew appellant and his family. Gary Hafford admitted he "had seen" appellant. Oliver Marshall knew appellant's family. Ruby Beatty knew appellant by sight. L.J. Carter knew appellant's family. Frederick Jackson and Willie Jackson actually did know appellant. The state's brief contends that he also struck the white jurors who knew appellant, but our review of the record reveals that these venirepersons were successfully challenged for cause by the defense. The prosecutor also stated as a reason for two of his strikes that Gary Hafford had four arrests and that Oliver Marshall had misdemeanor arrests. The following developed on cross-examination of the State's attorney:

Q. [Defense counsel:] Mr. Hardy, did you check the criminal records of all of the people on the Panel?

A. [Prosecutor:] I think we checked the records of most of them. I'm not sure we checked all of them since I didn't check the Panel. I don't know how to answer your question except to say most of them were checked.

Q. Did you instruct the Police to check the record of all the black jurors?

A. No, sir.

Q. What did you tell them to go check?

A. I didn't tell them to check anything. They usually did that on their own. And they let me know if they're involved in a case since I've been here in Jasper County.

Q. So they do it without you asking them to?

A. Yes, sir.

Q. You didn't question these black jurors individually to any great extent about how they knew the Defendant or whether they felt like they would be prejudiced or anything like that; did you?

A. Well, when you say to any great extent—I asked them the same questions I asked everybody else. I asked them if they knew the Defendant, and I also asked them if it would prejudice them one way or the other. So I really don't know how to answer your question except to say I asked the same questions to them that raised their hand that they knew Mr. Adams to all of them.[2]

Q. Do you know which of the police officers took it upon themselves to go look up the criminal records on people on the panel?

A. No, sir, I don't.

Q. Do you know who would have done that?

A. It would have had to be Mike Wilson or Mac Fraser[3], but I don't know exactly which one.

[Defense Counsel:] Can I ask them?

[Prosecutor:] I object to that. That goes outside *Batson*.

THE COURT: The objection is sustained.

The hearing then concluded and the trial court overruled appellant's motion. When error is based on the exclusion of evidence, it is usually necessary to make a bill of exceptions to show what the evidence would have been. *See* Tex.R.Crim.Evid. 103; Tex. R.App.P. 52. However, in this case the na-

---

**2.** The State's attorney only asked persons identified as black if they knew the defendant. Three people of unidentified race expressed a familiarity with appellant, but it was the defense counsel who asked how they knew appellant.

**3.** It has not escaped our attention that Mac Fraser was also a witness in the case and *was sitting on the venire.*

ture of the officers' testimony was obvious to all from the questions propounded to the prosecutor but not answered by him because he claimed personal knowledge of those matters to be with the officers and not himself. *See, Hurd v. State,* 725 S.W.2d 249 (Tex. Crim.App.1987). Furthermore, although the record is certainly vague, it appears defense counsel asked the court if he could call the officers and the court told him he could not. *See, Salazar v. State,* 795 S.W.2d 187 (Tex. Crim.App.1990). We hold appellant did not waive error by failing to call the officers to the stand for the purpose of making a bill of exceptions.

The prosecutor testified that he relied upon information provided by the officers in making his strikes. If the officers checked only the records of black venirepersons, the state's facially race neutral reason would be exposed as impermissible disparate treatment of black and white panelists. *See, Oliver v. State,* 826 S.W.2d 787 (Tex.App.— Beaumont 1992, pet. ref'd). Since the trial court sustained the State's objection to calling the officers to the stand, defense counsel was precluded from developing a record from which he could demonstrate reversible error. Point of error two is sustained.

The State argues that any testimony by the officers would be protected work product. The State did not present this notion to the trial court so we shall not consider it here.

Points of error four and five are overruled. Points of error two and three are sustained. We decline to rule upon point of error one because we have found other error in the *Batson* hearing. The judgment of the trial court is reversed and remanded for new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

In the case sub judice the majority sustains appellant's point of error two because the trial court sustained the State's objection of calling the officers to the stand. However, the majority acknowledges that, "[f]urthermore, although the record is certainly vague, it appears defense counsel asked the court if he could call the officers and the court told

him he could not." Why must vagueness always result in liberal assumption?

Appellant relies upon *Williams v. State,* 767 S.W.2d 872 (Tex.App.—Dallas 1989, pet. ref'd) for the proposition that because the trial court sustained the State's objection to appellant's counsel questioning Mike Wilson and Mack Frasier as to who looked up juror's criminal records and relayed this to the criminal district attorney's office, that his right to a *Batson* hearing was curtailed prematurely. I disagree, for the *Williams* case was remanded because the trial court in that case limited the cross-examination by the appellant of the prosecutor. The court in *Williams* held that in a *Batson* hearing, the Texas Rules of Criminal Evidence apply as does the trial court's inherent authority to control the conduct of the hearing. *Williams,* 767 S.W.2d at 875. I would conclude that if *Batson* does not change the rules of evidence then it should not change the rules of discovery. TEX.CODE CRIM.PROC. ANN. § 39.14 (Vernon 1979) states that the work product of counsel and their investigators are exempt from discovery. Defense counsel is not entitled to the work product of either the municipal police department or the county sheriff's office. *See Powers v. State,* 492 S.W.2d 274 (Tex.Crim.App.1973). *Batson* does not create an exemption to the work product privilege. *See Guilder v. State,* 794 S.W.2d 765 (Tex.App.—Dallas 1990, no pet.). Furthermore, the record is indeed vague as to whether appellant's counsel asked the court or prosecutor whether he could ask the police officers which of them had looked up the criminal history of the jury panel. The State did indeed object and the trial court sustained that objection. Defense counsel then stated that was all he had. Defense never called the officers or tried to make a bill of exception nor did he specifically state what his request of the court would be. In not going further, appellant did not preserve his complaint and therefore waived his ground of error on appeal. TEX.R.APP.P. 52.

The majority also sustains appellant's point of error three which contends that the trial court erred in allowing the State to introduce facts not in the record during the

State's closing argument. To the sustaining of this point of error I also dissent.

This case proceeded to trial on October 5, 1992, that being the day the court swore in the jury panel. Voir Dire of both the State and defense was recorded. Mr. Duboise, a former police administrator, stated on voir dire that he placed a lot of credibility in the officers involved in this case. A meeting was held before the bench and subsequent thereto Mr. Duboise left the courtroom. Ms. Lacey, wife of the current city manager, stated before the jury panel that she would give a lot of credibility to the officers' testimony. Another meeting was held before the bench which resulted in Ms. Lacey vacating the courtroom. Gary Gatlin, city attorney, stated before the jury panel that he felt the officers were credible persons. Again, a meeting was held before the bench and Mr. Gatlin left the courtroom.

My view of the statements made by State's counsel, in closing argument, were nothing more than statements reiterating what the jurors had already had the opportunity to observe. In this case the jury panel heard the comments made by the three jurors, observed those jurors go to the bench, and then observed those jurors leaving the courtroom. *See Jordan v. State,* 646 S.W.2d 946 (Tex.Crim.App.1983); *Thom v. State,* 167 Tex.Crim. 258, 319 S.W.2d 313 (Tex.Crim. App.1958); *Langley v. State,* 129 Tex.Crim. 254, 86 S.W.2d 755 (Tex.Crim.App.1935); *Threadgill v. State,* 124 Tex.Crim. 287, 61 S.W.2d 821 (Tex.Crim.App.1933).

I would overrule points of error two and three and affirm the judgment of the trial court.