

# NUMBER 13-18-00178-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAVID RYAN CAMPBELL,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 9th District Court
### of Montgomery County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Hinojosa

Appellant, David Ryan Campbell, was indicted for possession of a controlled substance with intent to distribute, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). After a jury trial, he was convicted and sentenced to thirty years in prison. *See* TEX. PENAL CODE ANN. § 12.32. Campbell appeals his conviction claiming the trial court erred in disallowing a jury instruction on the issue of voluntariness

of a statement.   We affirm.[1]

## I.   BACKGROUND

### A.   The Operation

On January 12, 2016, the Conroe Police Department employed a confidential informant, Travis Kellar, to purchase methamphetamine from Campbell.   At the onset of the operation, Detective Clyde Vogel searched Kellar for drugs, gave him $200 and a cellular telephone to make a video recording, and dropped him off near Campbell's trailer park.   Kellar knocked on the door and was invited in by a white male whose identity was later confirmed to be Campbell by the cellular telephone recording.   Kellar asked Campbell for a quarter of an ounce of methamphetamine.   According to the video recording, Campbell replied that he "may not have much right now," but would "re-up to get more drugs."   Campbell then sold 6.8 grams of methamphetamine to Kellar for $175. Kellar left the trailer and returned to the detectives with the methamphetamine and the video evidence.   After a laboratory test, Detective Vogel confirmed that the substance sold to Kellar was methamphetamine.   This was part of an ongoing investigation Detective Vogel performed in which informant Kellar purchased methamphetamine several times from the same location.   Kellar reported that Campbell was the person who delivered the drugs in each of the incidents.

---

[1]   This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket-equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001.

**B.    Voir Dire**

During the defense's voir dire examination of the jury, the following exchange occurred between the defense counsel (Q) and prospective jurors (A):

Q:    Okay.  Exactly.  Next one.  So the State has the burden to prove beyond a reasonable doubt all four of those things I just showed you, right?  But we have opportunities as well to bring up things and make their job even more difficult.  So the first thing would be voluntariness.  What does that mean?  Why would that be a defense?  Voluntariness of possession, what does that mean?

A:    That you volunteered that you have it.

Q:    Volunteered that I have it.  Okay.  What does that mean?

A:    Search warrant.

Q:    A search warrant.  So here's the defense voluntariness is that I know that I'm having it, right?  Make sense?  Everyone understand?  So there could be an argument that it wasn't voluntary to possess the substance, right?  Maybe someone left cocaine inside your house, and you didn't know about it.  And the cops showed up, and they found it.  Did you knowingly possess the cocaine?

A:    No.

Q:    No.  Why not?  You're shaking your head no.  Why not?

A:    You didn't know about it, so there's no intent.

Q:    Right.  Does that make sense?  That's what voluntariness has to do with.

The defense counsel never raised the issue of voluntariness of any statement or confession to the jury during the remainder of the trial.

3

**C.** **The Trial**

At the charge conference, the following conversation transpired between the trial court and the defense counsel:

> COURT: Okay. What's your other request?
>
> COUNSEL: For a defense voluntariness that I brought up with the jury in voir dire. It's clear from the evidence that I'm not sure how voluntary this was because of issues I've been bringing up, specifically that they are showing up at his house without a search warrant. They are coming in. I just think voluntariness applies to the facts of the case.
>
> COURT: I'll deny your request for the voluntariness instruction. I think that's a defensive issue regarding intent. Those definitions of intent are in there.

The trial court did not allow the requested jury instruction. The jury found Campbell guilty of possession of a controlled substance with intent to distribute and sentenced him to 30 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. DISCUSSION

By his sole issue, Campbell complains that the trial court erred when it failed to give a jury instruction regarding the voluntariness of a statement.

**A.** **Standard of Review and Applicable Law**

When the evidence raises an issue of the voluntariness of a defendant's statement, the trial judge must give a general voluntariness instruction to the jury; however, when the defendant does not request this instruction, the trial court's failure to include it is reviewed only for egregious harm. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008). Article 38.22, section 6 of the Texas Code of Criminal Procedure provides

4

that, "The section 6 requirement that voluntariness [of statements] be litigated in some manner before a jury instruction becomes necessary ensures that the trial judge is on notice that the instruction is required." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. *Oursbourn* set out a chain of other requirements that "must take place before the obligation to instruct the jury [under article 38.22, § 6] arises." *Smith v. State*, 532 S.W.3d 839, 843 (Tex. App.—Amarillo 2017, no pet.). Those requirements consist of: (1) a party notifying the trial judge of, or the trial judge noticing *sua sponte*, an issue about the voluntariness of the confession; (2) the judge conducting a hearing outside the presence of the jury on the issue; (3) the judge deciding whether the confession was voluntary; (4) if the confession is deemed voluntary, it being admitted into evidence at trial; and (5) the jury hearing evidence suggesting that the confession was actually involuntary. *Id.* at 843 (citing *Oursbourn*, 259 S.W.3d at 175); *see also Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007).

To trigger the exclusionary rule instruction, the defendant "must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement." *Oursbourn*, 259 S.W.3d at 171. "This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument." *Id.*

B. Analysis

In this case, Campbell never raised the issue of voluntariness as to any incriminating statements. Campbell's attorney did raise the issue of voluntariness of possession during voir dire, an issue that is separate and distinct from the voluntariness

5

of a statement. *See* TEX. PENAL CODE ANN. § 6.01(a)-(b) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."). Questions asked during voir dire discussions, though, do not constitute evidence before the jury. *See generally Adams v. State*, 869 S.W.2d 674, 677 (Tex. App.—Beaumont 1994, pet. ref'd) (holding that comments made during voir dire were not evidence and thus could not be relied upon to meet a challenge to the sufficiency of the evidence); *Young v. State*, 774 S.W.2d 66, 68 (Tex. App.—Beaumont 1989, no pet.) ("The question of an attorney is not evidence. . . .").

Upon requesting a jury instruction on "voluntariness" during the trial charge conference, Campbell's counsel stated,

> For a defense of voluntariness that I brought up with the jury in *voir dire* . . . . I'm not sure how voluntary this was because of issues I've been bringing up, specifically that they are showing up at his house without a search warrant. They are coming in. I just think voluntariness applies to the facts of the case.

There are different theories of involuntariness upon which a jury charge instruction can be based. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 38.21-.23 (voluntariness of statement); TEX. PENAL CODE ANN. § 6.01(a) (voluntariness of an act, omission, or possession). Here, the record is devoid of any mention of or requests for a jury charge instruction on the voluntariness of an incriminating statement or confession. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. And even if Campbell's counsel did in fact request a jury instruction on the voluntariness of his statement, Campbell would still fail

6

to meet the necessary requirements set forth in *Oursbourn*.   *Oursbourn*, 259 S.W.3d at 175.   Campbell's counsel did not notify the trial judge of an issue about the voluntariness of the alleged statement or confession, nor did the trial court sua sponte bring up the issue.   *Id*.   Further, the court did not conduct a hearing outside the presence of the jury on the issue to decide whether the confession was voluntary.   *Id*.   Finally, there is no evidence that if the confession was deemed voluntary, it was admitted into evidence at trial or that the jury heard evidence suggesting that the confession was involuntary.   *Id*.

Because Campbell failed to meet the criteria as explained in *Oursbourn*, he was not entitled to a jury charge instruction on the voluntariness of any statement. *Oursbourn*, 259 S.W.3d at 171; *see also Madden*, 242 S.W.3d at 509–10.   We overrule Campbell's sole issue.[2]

---

[2] In his brief, Campbell also appears to complain that the State should have sought a search warrant before sending Kellar in with a secret recording device.   The government, however, is entitled to use decoys and to conceal the identity of its agents in certain instances.   *Lewis v. United States*, 385 U.S. 206, 209 (1966).   "The home is accorded the full range of Fourth Amendment protections, but when the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street."   *Id.*   A warrant need not be obtained before an undercover agent, posing as a drug purchaser, may enter a person's home through invitation for the purpose of conducting an illegal drug transaction.   *Id.*   It is not an "unlawful search and seizure" when an undercover agent, on whose person is a hidden recording device, enters a place of business with consent and engages the suspect in incriminating conversation.   *On Lee v. United States*, 343 U.S. 747, 750 (1952); *see United States v. Russell*, 411 U.S. 423, 432 (1973) ("Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices.").

Here, Campbell had similarly converted his home into a "commercial center" to conduct unlawful business, entitling it to no greater sanctity than if it were carried on in the streets.   *Id.*   Consistent with *Lewis*, we hold that the police officers did not need a warrant for this operation and that Campbell's statements were legally obtained.   *Lewis*, 385 U.S. at 211.

### III. Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
25th day of July, 2019.

8