Opinion issued May 10, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00407-CR

———————————

JARED LEVI
WILLIAMS, Appellant

V.

THE STATE
OF TEXAS, Appellee



 



 

On Appeal from the 155th District Court

Waller County, Texas



Trial Court Case No. 09-03-13182

 



 

MEMORANDUM OPINION

          Jared
Levi Williams pleaded guilty to the offense of murder, and a jury assessed
punishment at ninety-nine years’ confinement and a $10,000 fine.[1] Williams raises three
issues on appeal, contending that the trial court erred by admitting unfairly
prejudicial evidence—specifically,
two autopsy photographs and a black ski mask—and by denying his request
for a new trial on the ground of jury-charge error. We affirm. 

Background

One Sunday afternoon, Williams, seventeen-years old at the
time, armed himself with a sawed off shotgun, borrowed his mother’s car, drove
to a nearby video store, and shot and killed the store owner. Looking to rent
videos, Yusell Figueroa and her father pulled into
the store’s parking lot a short time later and observed a young man speed off in
a silver or light blue car. Not thinking much about the young man’s erratic
driving, Figueroa and her father entered the video store and shopped for a few
minutes before noticing the complainant’s body lying behind the store counter.
Figueroa called 911. Police officers responding to Figueroa’s call discovered
that the store’s money drawer was open and empty of cash. But not all items of
value had been removed from the crime scene; on the complainant’s body,
investigators found more than $500 in cash, several credit cards, and a gold
chain. 

Williams returned home and confessed to his mother that he
shot someone. At his mother’s urging, Williams turned himself in to police not
more than one hour later. Sergeant Diaz, a Texas Ranger assisting local police
with the investigation of the complainant’s death, noticed that Williams had
been crying when he arrived at the police station. Williams consented to the
collection of forensic evidence from his person and clothing, including
gun-shot residue and blood samples. Police noted an injury to Williams’s right
hand and recovered a small amount of cash from his pocket that included twenty-eight
one-dollar bills, two five-dollar bills, and one ten dollar bill stained with his
blood. Williams’s mother also cooperated with the investigation, informing
police that they could recover the shotgun used to shoot the complainant from a
neighbor whom she asked to hold the gun out of fear Williams would take his own
life. She gave the police permission to search her car and Williams’s
bedroom.   

Sergeant Diaz conducted the search of Williams’s bedroom. There,
he recovered the barrel and stock of the shotgun from Williams’s closet and a black
ski mask from near Williams’s bed. Sergeant Diaz testified that the crude manner
in which the shotgun was sawed off would cause injury to the person firing the
gun. This, he opined, might be the reason the police found Williams’s blood—and
not the complainant’s blood—on Williams’s clothing, on the money in his pocket, and in his mother’s
car. Sergeant Diaz further explained that the ski mask was handmade by cutting
holes for the eyes and mouth from a ski hat. He thought the mask might be “a
piece of evidence consistent with a robbery[.]” Unlike
other items Williams had touched, however, the mask did not contain traces of blood,
hair, or other DNA. And no witness testified that Williams wore the ski mask.  

Following the police investigation, Williams was indicted for
capital murder. The indictment alleged that Williams “intentionally or
knowingly cause[d] the death of [the complainant] by shooting [the complainant]
with a firearm . . . in the course of committing or attempting to commit the
offense of robbery of [the complainant].” Williams pleaded guilty to the
lesser-included offense of murder, and the indictment was amended to omit the
capital murder charge. Williams elected to have a jury assess his punishment. 

Using a projection screen, the State presented the jury with
a video and numerous color photographs of the complainant’s body and the crime
scene. Dr. D. Phatak, an assistant medical examiner,
testified as to the cause of the complainant’s death: a fatal gun-shot wound to
the head. To support his testimony, Dr. Phatak relied
on numerous color photographs taken during the various stages of the autopsy,
including two photographs depicting the inside of the complainant’s skull and
brain. Williams objected to these two autopsy photographs and some of the crime
scene photographs in oral motions in limine, which
the trial court denied. 

The jury also heard testimony about the complainant’s and
Williams’s backgrounds. While members of the complainant’s family testified that
the complainant was beloved and a hard working small business owner, members of
Williams’s family testified that Williams had suffered mental health and social
issues. Williams’s cousin explained that Williams had taken to “huffing” cans
of compressed air. And, in the months preceding the complainant’s death,
Williams’s mother discovered a suicide note in his bedroom. A court-appointed
psychiatrist diagnosed Williams as having a severe “depressive order,” which
was aggravated by his use of inhalants and might impair his thought process or
ability to control impulses.      

After two full days of testimony, the trial court submitted
the case to the jury for its consideration. The court’s charge, however,
omitted statutorily-mandated instructions regarding the jury’s consideration of
a defendant’s parole-eligibility in non-capital murder cases. The error was
discovered when the jury asked a question about Williams’s eligibility for parole
during its deliberations. The trial court then submitted an amended charge
containing all of the statutorily-mandated instructions regarding parole,
including the instruction that the jury not consider Williams’s eligibility in
assessing punishment. The jury returned a verdict assessing the maximum
punishment available under the Penal Code: ninety-nine years’ confinement and a
$10,000 fine. Williams appealed. 

Admission of Evidence

          William’s
first two issues concern the admission of evidence. In his first issue,
Williams argues that the trial court erred by admitting two autopsy photographs—specifically,
the State’s exhibits 60 and 61 depicting the inside of the complainant’s skull
and brain—the probative
value of which were substantially outweighed by the danger of unfair prejudice.
In his second issue, Williams makes a similar argument regarding the black ski
mask, asserting that its admission was unfairly prejudicial because there was
no evidence he used the ski mask during the commission of the offense. 

We review the trial court’s evidentiary
rulings for an abuse of discretion. See Schultze v. State, 177 S.W.3d 26, 40 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d) (op. on reh’g) (noting trial court’s broad discretion in
determining admissibility of evidence at punishment). A trial court abuses its
discretion when its ruling is arbitrary or unreasonable. State v. Mechler,
153 S.W.3d 435, 439 (Tex. Crim. App. 2005). There is no abuse of
discretion if the trial court’s decision is within the “zone of reasonable
disagreement.” Bigon v. State, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). 

I.       Two autopsy photographs

           To preserve the error alleged in his first issue regarding
the admission of the autopsy photographs, Williams was required to object in a
timely fashion, state the specific ground for his objection, and obtain an
adverse ruling by the trial court. See Tex. R. App. P. 33.1(a); Fuller
v. State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).
Before opening statements, Williams presented oral motions in limine to the trial court, objecting to the two autopsy
photographs at issue on the ground that the prejudicial effect of showing the
jury pictures of the complainant’s skull and brain, mutilated by autopsy
procedures, outweighed the photographs’ probative value. The trial court
determined that it would allow the autopsy photographs, and, when the State
published the photographs to the jury during direct examination of the medical
examiner, Williams did not renew his objection.[2]
Therefore, the ruling on the admissibility of the autopsy photographs was the trial
court’s denial of Williams’s oral motion in limine. A
motion in limine, however, preserves nothing for our review.
See Fuller, 253
S.W.3d at 232. “For error to be preserved with regard to the subject of
a motion in limine,
an objection must be made at the time the subject is raised during trial.” Id. By failing to make objections to the
autopsy photographs at the time they were published to the jury and testified
to by the medical examiner, Williams forfeited his right to complain on appeal.
We overrule his first issue. 

II.      The black ski mask

          Unlike his first issue, Williams’s
second issue complaining about the admission of the black ski mask is preserved
for our review.[3] Williams argues that
“[t]he trial court erred in admitting [the ski mask] when there was no evidence
[he] had used the mask during the offense,” meaning the ski mask “had no
probative value apart from suggesting extraneous offenses.” Even assuming Williams
is correct, we will not reverse the trial court’s
judgment if the alleged error was harmless. Rule of Appellate Procedure 44.2(b)
provides that any error, other than constitutional error, not affecting a
defendant’s substantial rights must be disregarded. See Tex. R. App. P.
44.2(b); Sells v. State, 121 S.W.3d
748, 764 n. 69 (Tex. Crim. App. 2003). Error, if any, in the admission of the
ski mask is non-constitutional error. See
Casey v. State, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007) (applying
standard of review under rule 44.2(b) to erroneous admission of evidence); see also Walters v. State, 247 S.W.3d
204, 219 (Tex. Crim. App. 2007) (stating erroneous evidentiary ruling generally
constitutes non-constitutional error and is reviewed under rule 44.2(b)).

Williams’s substantial rights were affected if, after
reviewing the record as a whole, we conclude the error had a substantial and
injurious effect or influence on the outcome of the proceeding. Burnett v. State, 88
S.W.3d 633, 637 & n.8 (Tex. Crim. App. 2002); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).
Stated conversely, Williams’s substantial rights were not affected by the
erroneous admission of the ski mask if we, after examining the record as a
whole, have fair assurance that the error did not influence the jury, or had
but a slight effect. McDonald
v. State, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005); Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).

In assessing harm, we examine the entire record and calculate,
as much as possible, the probable impact of the error upon the rest of the
evidence. Coble v.
State, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). We consider,
among other relevant factors, the testimony or physical evidence admitted for
the fact finder’s consideration, the nature of the evidence supporting the
verdict, the character of the alleged error, and how the evidence might be
considered in connection with other evidence in the case. Haley v. State, 173 S.W.3d 510, 518
(Tex. Crim. App. 2005); Motilla,
78 S.W.3d at 355−56.


After two days of testimony from eighteen witnesses, the jury
here assessed the maximum sentence permitted under the Penal Code: 99
years’ confinement and a $10,000 fine. See
Tex. Penal Code
Ann. § 12.32 (West 2011).
Before reaching that verdict, however, the jury heard testimony that the
complainant was shot in the head with an illegal firearm, a sawed off shotgun. The
jury was also presented with a crime-scene video and more than twenty properly admitted or unobjected-to photographs depicting the gruesome
circumstances of the complainant’s death. Members of the complainant’s family
testified about the impact of his death on their lives. The ski mask was but a
single piece of evidence in the State’s case for sentencing, and Williams’s
trial counsel took steps to minimize its evidentiary weight. During
cross-examination, trial counsel elicited testimony from the investigating
officers that the ski mask was not found alongside the discarded shotgun parts
in Williams’s closet, that the ski mask was not tested for DNA, that, unlike
many of the other items William’s touched on the day of the complainant’s
death, the ski mask was not soiled with blood, and that no one had seen Williams
wearing the mask. Trial counsel also asked Figueroa whether the young man she
saw speed away from the video store parking lot was wearing a mask; she
answered in the negative. In closing arguments, trial counsel again addressed
the ski mask, pointing out the lack of evidence of its use during the
commission of the offense and urging the jury not to consider the ski mask in
assessing punishment. At no point during the trial did the State dwell upon or
emphasize the ski mask; in fact, the State did not mention the ski mask once
during its closing argument. After examining the record as a whole, we have a
fair assurance that the alleged error did not influence the jury, or had but a
slight effect. See Motilla,
78 S.W.3d at 355. We therefore hold that any error in
admitting the ski mask was harmless, and we overrule Williams’s second issue. See Tex.
R. App. P. 44.2(b).


Charge Error

It is undisputed that the charge
initially given to the jury in this case was inaccurate. Section 4(a) of
article 37.07 of the Code of Criminal Procedure required the trial court to
instruct the jury on parole eligibility as follows: 

Under the law applicable in this case, the defendant, if
sentenced to a term of imprisonment, may earn time off the period of
incarceration imposed through the award of good conduct time. Prison
authorities may award good conduct time to a prisoner who exhibits good
behavior, diligence in carrying out prison work assignments, and attempts at
rehabilitation. If a prisoner engages in misconduct, prison authorities may
also take away all or part of any good conduct time earned by the prisoner.

 

It is also possible that the length of time for which the
defendant will be imprisoned might be reduced by the award of parole.

 

Under the law applicable in this case, if the defendant is
sentenced to a term of imprisonment, he will not become eligible for parole
until the actual time served equals one-half of the sentence imposed or 30
years, whichever is less, without consideration of any good conduct time he may
earn. If the defendant is sentenced to a term of less than four years, he must
serve at least two years before he is eligible for parole. Eligibility for
parole does not guarantee that parole will be granted.

 

It cannot accurately be predicted how the parole law and
good conduct time might be applied to this defendant if he is sentenced to a
term of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.

 

You may consider the existence of the parole law and good
conduct time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.

 

Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (West 2011). The charge,
however, omitted the last two paragraphs of section 4(a). Neither party noticed
or objected to the omission of the statutorily-mandated language prior to the
jury’s deliberations—the error was discovered only when the jury asked a
question about Williams’s eligibility for parole. Before the jury reached a
verdict, the trial court interrupted deliberations, retrieved the original
charge from the jury, submitted an amended charge containing all of the section
4(a) language, and instructed the jury to continue deliberating. Neither party
objected to the amended charge. In his third issue, Williams argues the
omission of the statutorily-mandated language was egregiously-harmful error
because it caused the jury to consider the effect of parole in its assessment
of punishment. We disagree.

“Article 36.16 of the Texas Code of
Criminal Procedure has been interpreted to permit a trial court to withdraw and
correct its charge if convinced an erroneous charge has been given.” Smith v. State, 898 S.W.2d 838, 854
(Tex. Crim. App. 1995); see also Bustillos v. State, 464 S.W.2d 118, 125−26 (Tex. Crim. App. 1964) (“In
light of the purpose of [art. 36.16] the court may before verdict withdraw and
correct its charge if convinced an erroneous charge has been given.”).
The trial court corrected the charge error in accordance with section 4(a)’s
mandate. And the amended language was favorable to Williams in its instruction
that the jury not “consider the manner in which the parole law may be applied
to [Williams]”; the original charge did not include any prohibition against the
jury’s consideration of Williams’s parole eligibility. We therefore perceive no
error, and we overrule Williams’s third issue. 

Conclusion

          Having overruled each of
Williams’s issues on appeal, we affirm the trial court’s judgment.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.

Do
not publish. Tex. R.
App. P. 47.2(b).

 

 











[1]           See
Tex. Penal Code
Ann. § 19.02 (West 2011).






[2]
          We note that, although the
autopsy photographs were published to the jury during the medical examiner’s
testimony, we cannot find any place in the record where the trial court
actually admitted the exhibits. This is of no consequence to our determination
that Williams’s waived his right to complain about the prejudicial effect of
the photographs by failing to object at the time they were published to the
jury.

 





[3]
          Although he made his objection to the admissibility of the ski mask during
the presentation of his motions in limine, Williams
renewed his objection when the State offered the ski mask at trial.